UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LE'NETTA W. STONE,

       Plaintiff,                      CIVIL ACTION NO. 13-10044

vs.

                                    DISTRICT JUDGE TERRENCE G. BERG

COMMISSIONER OF            MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION:** This Court recommends that Plaintiff's motion for summary judgment (docket no. 16) be **GRANTED**, Defendant's motion for summary judgment (docket no. 18) be **DENIED**, and this matter be reversed and remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**II.   PROCEDURAL HISTORY:**

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on June 30, 2010. (TR 199). She protectively filed a Title XVI application for supplemental security income on March 29, 2011. In both applications she alleged disability beginning May 3, 2010 due to disc protrusions, type II diabetes, tendinitis, a possible tear in the left shoulder, high cholesterol, depression and hypothyroidism. (TR 126-38, 169). The Social Security Administration denied benefits and Plaintiff filed a written request for a *de novo* hearing. On September 15, 2011 Plaintiff appeared with counsel in Detroit, Michigan and testified at a hearing held by Administrative Law Judge (ALJ) Roy L. Roulhac. (TR 28-54). Vocational Expert (VE)

Annette Holder also appeared and testified at the hearing. In an October 4, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because the evidence showed that there were a significant number of jobs existing in the national economy that she could perform. (TR 11-23). The Appeals Council declined to review the ALJ's decision and Plaintiff filed a *pro se* complaint for judicial review. The parties filed cross motions for summary judgment which are currently before the Court.

### III. PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

#### A. Plaintiff's Testimony

Plaintiff was forty-four years old on the alleged disability onset date. She earned a Bachelor's degree from college and completed a Master's degree in 2009. (TR 33-34, 170, 179). Plaintiff testified that she lives alone. She claimed that she stopped working in May 2010 because of back issues and because she was in so much pain that she could not bear weight on her right leg. (TR 35, 38). She testified that she has pain across her hips when laying down, shooting pain in her feet and ankles, and pain-induced numbness in both legs. (TR 40, 43-44). She stated that she injured her shoulder at work and she gets spasms on the right side of her lower waist. (TR 40-42). She claimed that she sometimes falls unexpectedly. (TR 43).

Plaintiff testified that she has received two steroid injections that provided significant but not long lasting relief. (TR 35-36). She described her pain on a typical day as a constant dull pain at a level four or five on a ten point scale. (TR 36-37, 45). She claimed that the pain increased to a level nine or ten after she took a more physically demanding job. She also claimed that her pain "spikes" several times a day and up to three or four times at night. (TR 45, 47). Plaintiff reported that she participated in physical therapy for back and shoulder issues. (TR 40). She reported that

she has not tried over-the-counter pain medications because they do not work for her, with the exception of Flexeril which she states relieves her pain for up to twenty-four to forty-eight hours at a time. (TR 37, 44-46). Plaintiff testified that she has not taken medication since March 2010 because she has no insurance. She stated that she has been advised to stop receiving epidural injections because they can cause her fibroid tumors to become cancerous. (TR 44, 49). She also stated that she has not explored treatment from any free clinic because that would require her to drive and because she does not qualify for free aid. (TR 46, 48).

Plaintiff testified that "walks in circles" in her apartment on a typical day she and lays in bed to keep herself occupied. (TR 40). She claimed that the television is often on but she does not watch or listen to it. She reported that she prepares sandwiches, cooks meals in the crockpot, and tries to perform housework. She estimated that she can stand or walk for five minutes before the pain and the pressure begin to bother her, she can sit without difficulty but is sometimes stiff upon rising, and she can carry approximately five to ten pounds. (TR 43). She testified that "she can only hope" that she could perform a job where she can sit or stand at will and not lift anything weighing more than ten pounds. (TR 42).

**B.     Medical Evidence**

The undersigned has thoroughly reviewed Plaintiff's medical record. In lieu of summarizing her medical history, the undersigned will make references and citations to the record as necessary in response to the parties' arguments.

**IV.    VOCATIONAL EXPERT TESTIMONY**

The VE testified that Plaintiff has past work as an administrative clerk at a light, semi-skilled level although heavy as performed, as a ward or unit clerk at a light, semi-skilled level, and as a

3

medical clerk at a light, skilled level. (TR 51-52). The ALJ asked the VE to testify whether jobs were available for an individual of Plaintiff's age, education, and past relevant work experience who could perform a job sitting down with the following requirements: (1) lifting no more than ten pounds, (b) sitting for six hours, (c) standing and walking two hours in an eight hour day, (d) occasional climbing of ramps and steps, balancing, stooping, kneeling, crouching and crawling, (e) occasional reaching with the left upper extremity, (f) must avoid unprotected heights, (g) limited to performing simple tasks with a specific vocational preparation code of one or two,[1] and (h) requires a sit/stand option at will. (TR 52-53). The VE testified that an individual with these limitations would not be able to perform Plaintiff's past relevant work, but could perform jobs as a packer (DOT 559.687-014), inspector (DOT 521.687-086), and reception clerk (DOT 237.367-018), comprising 3,400 jobs in southeast Michigan. (TR 53). The VE testified that the individual would not be able to sustain competitive employment if she was off task for more than twenty percent of the day because she needed to take unscheduled breaks, or if she would miss more than four days of work each month.

## V.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015. He found that while Plaintiff has not engaged in substantial gainful

---

[1]"SVP (specific vocational preparation) is 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation'....The requisite time is ranked on a scale from one to nine, with nine representing the most time needed to learn a job." *Creech v. UNUM Life Ins. Co. of N. Am.*, 162 Fed. Appx. 445, 459 (6th Cir. 2006) (citing the Dictionary of Occupational Titles (DOT) app C ¶ II (4th Ed. 1991)). In the DOT, unskilled work corresponds to an SVP of 1-2. Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *3.

activity since her alleged onset date of May 3, 2010, and suffers from the severe impairments of multilevel degenerative changes and bulges, a rotator cuff tear status post repair, obesity, and an adjustment disorder, she did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (TR 11-15).

The ALJ concluded that Plaintiff has the residual functional capacity (RFC) to lift no more than ten pounds; sit six hours total out of an eight hour workday; walk two hours total out of an eight hour workday; must avoid more than occasional reaching with her left upper extremity or more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, or crawling; must avoid concentrated exposure to unprotected heights; limited to no more than simple one to two step tasks; and requires a sit/stand option. (TR 15-21). The ALJ concluded that Plaintiff is not capable of performing her past relevant work, but is able to perform jobs that exist in significant numbers in the national economy. Consequently, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act from May 3, 2010 through October 4, 2011, the date of the ALJ's decision. (TR 21-22).

## VI.    LAW AND ANALYSIS

### A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.      Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.

1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff argues that the ALJ failed to take into account the job task, her work injury, the medical restrictions and limitations, and her symptoms. She claims that the ALJ disregarded the fact that her work tasks caused her injuries. She argues that she has worked in jobs similar to those suggested by the VE and has found that she is not able to stand for the amount of time required to perform the jobs. She also claims that she does not believe that she can work for eight to ten hours per day with her symptoms and then safely drive home. The crux of her argument simply is that she disagrees with the ALJ's decision that she is not disabled.

*1.   Steps One Through Three*

At step one of the five-step sequential analysis the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 3, 2010. The parties do not dispute the ALJ's step one finding.

At step two of the analysis the ALJ found that Plaintiff has the severe impairments of multilevel degenerative changes and bulges, a rotator cuff tear status post repair, obesity and an adjustment disorder. The ALJ considered Plaintiff's diabetes, high cholesterol and hypothyroidism and concluded that these conditions were not severe because they were mostly controlled with medication and did not significantly impede her functional abilities in the workplace.

It is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps" and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r*, 299 Fed. Appx. 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008)); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The ALJ proceeded to the remaining steps of the sequential analysis following his step two analysis. The undersigned finds no error in the ALJ's step two analysis.

The ALJ proceeded to step three, finding that Plaintiff did not have a listing level impairment. (TR 14-15). The step three finding was based on the absence of any medically objective evidence in the record to show that Plaintiff's impairments met or medically equaled any listed impairment. Plaintiff has not shown that the ALJ erred in the step three assessment. *Foster v Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (the claimant carries the burden of demonstrating that his impairment satisfies the diagnostic description for the listed impairment).

*2.    The Credibility Assessment*

After considering the evidence the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms. Once this finding was made, the ALJ was required to evaluate the evidence as a whole, including Plaintiff's own statements about her pain or other symptoms, and consider the extent to which the intensity and persistence of the symptoms could limit her ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). Whenever the evidence as a whole fails to support a claimant's statements about the intensity, persistence, or limiting effects of her pain or symptoms, the ALJ is required to make a finding on the claimant's credibility. SSR 96-7p, 1996 WL 374186, at *2. "[A]n ALJ's findings based on the credibility of [a claimant] are to be accorded great weight and deference." *Walters v. Comm'r*, 127 F.3d at 531.

Here, the ALJ provided an accurate and thorough summary of Plaintiff's testimony and her subjective complaints about the effects of her pain and other symptoms on her ability to work. After doing so, the AlJ considered the medical evidence and concluded that the objective findings failed to support Plaintiff's allegations of disabling symptoms and limitations. The ALJ addressed the evidence pertaining to Plaintiff's back pain, noting that Plaintiff was found to have multiple disc protrusions, an outer annulus fissure at the L3-L4 disc extending foraminally on the left, an L5-S1 epidural lipomatosis, and minimal facet arthropathy at L5-S1. He noted that Plaintiff's neurosurgeon, Dr. Balarezo, found that Plaintiff had disc protrusions and multilevel degenerative changes without nerve root compression. He observed that Dr. Balarezo did not recommend surgery to correct Plaintiff's back condition and instead suggested epidural steroid injections and physical therapy.

The ALJ discussed evidence pertaining to Plaintiff's left shoulder condition, noting that she underwent arthroscopic surgery to remove calcification and repair a torn rotator cuff. He observed that Plaintiff was medically cleared to return to work in February 2011 with the restrictions that she should avoid lifting more than five pounds and not engage in any above shoulder level work. He then considered Plaintiff's obesity and history of depression.

The ALJ discussed other evidence of record in addition to the objective medical evidence. For instance, the ALJ considered Plaintiff's daily activities, noting that she could prepare simple meals, perform light housework, drive when necessary, pay bills, and cash a check. He observed that Plaintiff did not require the use of an assistive device to ambulate. He addressed Plaintiff's medication use, the fact that she received mostly routine and conservative treatment for her impairments, and the fact that there were gaps of time during which she did not complain of medical problems or follow up with treatment. He noted that Plaintiff underwent epidural steroid injections and participated in physical therapy. He also noted that Plaintiff testified that she may be able to perform sedentary work with a sit/stand option. All of this goes to show that the ALJ did not reject Plaintiff's statements about the intensity and persistence of her pain solely because the objective medical evidence did not support her statements, but rather considered other relevant factors as required by 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff alleges that her lack of treatment was due to her lack of insurance. Assuming this to be true, the ALJ was still permitted to consider the gaps in Plaintiff's treatment history. Social Security Ruling 96-7p states that the ALJ may find the claimant's statements to be "less credible if the level or frequency of treatment is inconsistent with the level of complaints" as long as the ALJ considers the claimant's explanations or other evidence explaining her failure to seek medical

treatment. SSR 96-7p, 1996 WL 374186, at *7. *See also Lockett v. Comm'r*, No. 11-13709, 2012 WL 3759037, at *8 (E.D. Mich. Aug. 1, 2012) (an ALJ may consider a claimant's lack of medical treatment when assessing credibility, even where the claimant testified that the lack of treatment was due to financial constraints). Here, the ALJ noted that Plaintiff testified that she lost her insurance. He then considered a variety of other factors and ultimately discredited Plaintiff's testimony of disabling symptoms. The undersigned suggests that the ALJ was within his bounds to consider the consistency of Plaintiff's complaints and medical treatment in assessing her credibility.

The ALJ considered all of the above and concluded that Plaintiff's subjective complaints of disabling pain and symptoms were not entirely credible and not completely supported by the evidence of record. However, the ALJ did not fully discredit Plaintiff's testimony. In fact, the ALJ imposed multiple limitations on Plaintiff's ability to work, limiting the amount of time she could sit and walk during an average workday, imposing a sit/stand requirement, and restricting her in the amount of weight she could lift on the job. He also imposed postural limitations, limited her to no more than occasional reaching with her left upper extremity, and limited her to no more than simple one to two step tasks. He simply did not credit her statements that she was fully disabled.

The ALJ considered appropriate factors, supported his credibility finding with substantial evidence, and provided a reasonable explanation for why he found that Plaintiff's testimony was not fully credible. The ALJ's credibility assessment should not be disturbed.

*3.     Treatment of the Medical Opinion Evidence*

It is well-settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other

substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source, and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error 1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;"2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or 3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R.§§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The

district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir.2009)).

The record shows that the ALJ considered the medical evidence, citing to evidence that both supports and fails to support Plaintiff's disability claims. The ALJ clearly identified the fact that he assigned only little weight to the February 2011 opinion of Plaintiff's treating neurosurgeon, Dr. Balarezo. (TR 461). In that opinion, Dr. Balarezo stated that Plaintiff was disabled from work due to stenosis and bulging discs in her lumbar spine. Dr. Balarezo reached this conclusion without citing medical evidence to support his finding. The ALJ found that this opinion was inconsistent with Dr. Balarezo's own treatment records and the other evidence of record which showed that Plaintiff's back condition did not require surgery and could be treated with epidural steroid injections, physical therapy, and generally more conservative treatment methods. He also found that the opinion was not consistent with the evidence of record showing that Plaintiff had gaps in her treatment and could walk without an assistive device.

Next, the ALJ stated that he gave little weight to the May 2011 opinion of Plaintiff's primary care physician, Dr. Rivera. (TR 455-58). In that opinion, Dr. Rivera opined that Plaintiff was unable to work on a full-time or part-time basis because of her lumbar disc disease with radiculopathy and her torn ligament in the right shoulder. Dr. Rivera's May 2011 opinion further

states that Plaintiff was limited in her ability to kneel, reach, lift, push, stoop, climb and pull, but not in her ability to walk or stand. The doctor indicated that Plaintiff's condition should improve with treatment. The ALJ concluded that Dr. Rivera's opinion that Plaintiff was disabled was inconsistent with his treatment notes showing that Plaintiff's only abnormality during the May 2011 examination was tenderness in the lumbar spine. The ALJ also noted that Dr. Rivera did not examine Plaintiff from July 2010 to May 2011.

Next, the ALJ addressed the opinions of consultative examiner, Dr. Bray, and the State agency psychologist and decision-maker. He discussed their opinions, indicated the weight he assigned to the opinions, and supported his conclusions with citations to the record. It is the undersigned's opinion that the ALJ's treatment of the opinions of Dr. Balarezo, Dr. Rivera, Dr. Bray and the State agency psychologist and decision-maker was proper and should not form the basis for a remand.

However, the ALJ's opinion is silent with respect to the weight he assigned to the opinions of Plaintiff's treating physician, Dr. Kevin Sprague, and in particular to Dr. Sprague's February 2011 opinion. Plaintiff presented to Dr. Sprague in June 2010 with complaints of left shoulder pain and elbow discomfort. (TR 323). After more conservative treatment failed, Dr. Sprague performed a subacromial decompression, repair of a SLAP tear, and a rotator cuff repair. (TR 327). Post-operatively, Dr. Sprague put Plaintiff on a home exercise regimen that included weight lifting with low weights and high repetitions. (TR 332). In February 2011, Dr. Sprague evaluated Plaintiff and noted that her pain was improved but she still complained of stiffness and discomfort. (TR 345). He recommended that she continue with her home exercise program and therapy twice a week. He also stated that Plaintiff could return to work provided she lift no more than five pounds and avoid

14

repeated reaching and continuous above-shoulder level work.

The ALJ did not identify the weight he assigned to the February 2011 opinion of Dr. Sprague in which the doctor imposed work restrictions. Defendant contends that the ALJ's oversight should be deemed harmless error since most of Dr. Sprague's limitations were consistent with those stated in the ALJ's RFC finding. The undersigned disagrees. Dr. Sprague imposed a weight limitation of five pounds and a restriction against continuous above-shoulder level work. The ALJ's RFC calls for a ten pound weight limit and is silent as to any restriction on over-the-shoulder reaching. The ALJ also did not incorporate any over-the-shoulder limitation or five pound weight restriction in any hypothetical to the VE. Consequently, the ALJ not only failed to assign weight to Dr. Sprague's treating opinion, but he also did not fully adopt the doctor's physical limitations. In addition, the ALJ discounted Dr. Rivera's opinion on disability in part because Dr. Rivera was not an orthopedic specialist. To then fail to address or assign weight to the opinion of the orthopedic specialist is not harmless error. The undersigned recommends that this matter be reversed and remanded for further consideration of the weight to be assigned to Dr. Sprague's February 2011 opinion.

*4. New Evidence*

Defendant states that the record contains several notes regarding Plaintiff's work restrictions dated between 2006 and 2008 that were submitted for the first time to the Appeals Council. (TR 4, 480-85). When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new

15

evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...." 42 U.S.C. § 405(g). In order for a claimant to satisfy the burden of proof as to materiality, "[she] must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore,* 865 F.2d at 711.

Plaintiff has not argued for a sentence six remand for consideration of the evidence presented to the Appeals Council. She has not made any argument showing that she had good cause for failing to submit the evidence in time for it to be considered by the ALJ, nor has she made any argument showing that there was a reasonable probability that the ALJ would have reached a different disposition of her claim if he had been presented with the evidence. The Court should find that there are insufficient grounds to remand this matter solely for reconsideration of the new evidence under sentence six of 42 U.S.C. § 405(g). However, if this recommendation is adopted and this case is remanded back to the ALJ pursuant to sentence four of 42 U.S.C. § 405(g) for reconsideration of the weight to be assigned to the opinion of Dr. Sprague, upon remand the new evidence may be considered in full. *See Boley v. Astrue*, No. 11-10896, 2012 WL 680393, at *17 (E.D. Mich. Feb. 10, 2012) (on a sentence four remand it would be beneficial for the ALJ to consider new evidence simply to create a full and complete record); *Davenport v. Comm'r*, No. 10-11350, 2011 WL 2601042, at *5 (E.D. Mich. June 30, 2011).

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a

waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: November 13, 2013         s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Le'Netta Stone and Counsel of Record on this date.

Dated: November 13, 2013         s/ Lisa C. Bartlett
                                 Case Manager

17